IRWIN K. CARSON, Plaintiff-Appellant, v. NORTHWEST COMMUNITY HOSPITAL *et al.*, Defendants-Appellees.

First District (5th Division) No. 1—86—3259

Opinion filed December 8, 1989.

Terry F. Moritz, Alan P. Solow, and Mindy B. Gordon, all of Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., of Chicago, for appellant.

Francis X. Grossi, Jr., Michael R. Callahan, Laurence H. Lenz, Jr., and Cynthia Photos Abbott, all of Katten, Muchin & Zavis, of Chicago, for appellees.

Mark Damian Deaton and Daniel J. Mulvanny, both of Illinois Hospital Association, of Naperville, for *amicus curiae* Illinois Hospital Association.

JUSTICE PINCHAM delivered the opinion of the court:

Plaintiff, Irwin K. Carson, appeals from the dismissal of his complaint against defendants Northwest Community Hospital, Rollo Nesset, James Cox, Ralph Lidge, Robert Alfini, David Bakken, Wilton Bunch, Kris Howard, Joseph Vavra, John Woods, Edwin Bruning, Don Torisky, Mark Beaubien, Thomas Kim, Miles Lynch, Blaine Yarrington, Robert H. Bukowski, Dennis Brown, Malcolm MacCoun, Burton Chotiner and Charles Kennedy, following the summary suspension of his hospital staff privileges.

In his four-count complaint plaintiff sought a mandatory injunction that he be reinstated to full staff privileges at the hospital and damages for breach of contract, tortious interference with contractual relations and violation of the Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—1 *et seq.*). The issue presented on appeal is whether the trial court improperly dismissed plaintiff's complaint.

Plaintiff's complaint alleged that he was a physician and board-certified specialist in orthopedics when he became a full staff member of the hospital in 1976. In August 1984, the secretary of the medical executive committee notified plaintiff that a request for corrective action had been filed against him with regard to a " 'series of surgical

cases.' " The following month, the committee informally interviewed plaintiff. Afterwards, it issued recommendations that he be placed in a two-year probation; that his cases be reviewed; that he obtain consultation before performing further surgery; and that his surgical cases be monitored pending a hearing on the charges against him.

The complaint further alleged that on October 9, 1984, during a telephone conversation with the chief administrator of the hospital, plaintiff was advised that his surgical privileges had been summarily suspended and that the suspension was immediately effective. The disciplinary action was taken because plaintiff had failed to obtain consultants on surgical patients and the hospital had questions regarding a patient upon whom plaintiff had performed surgery. On October 10, 1984, plaintiff submitted a written request to the secretary of the medical staff for a hearing. The following day, plaintiff filed his initial complaint seeking injunctive and other relief. After the court dismissed that portion of the complaint seeking injunctive relief, plaintiff amended his complaint.

Plaintiff further alleged that he requested a hearing before the medical executive committee on his summary suspension. Two days after he met with the committee, the latter issued a decision sustaining plaintiff's summary suspension on the basis that he had exhibited inadequate preoperative decision making and provided inadequate post-operative care and " 'problems relating to a recent patient who suffered a multiple fracture and degloving injury.' " The committee indicated that the suspension " 'was taken in the interest of protecting the life and well being of patients' " at the hospital.

According to plaintiff's complaint, he requested a hearing to refute the decision. A panel composed of five physicians who were plaintiff's peers convened nine times over six months to hear plaintiff's case. Over plaintiff's objection, counsel for the hospital provided legal assistance to the panel. Plaintiff was also represented by counsel. The committee entered a decision which found that the summary suspension had been properly entered but that it would be lifted conditioned upon plaintiff's completion of a continuing education course on management of orthopedic infection and submission to supervision, review, consultation and assistance of his surgical procedures for one year, at which time another hearing panel would review his performance and make recommendations to the medical executive committee. Thereafter, the attorney for the hospital issued a summary of the evidence heard by the panel and its decision. When the board of directors of the hospital met in executive session, it rejected the recommendation of the panel and reinstated plaintiff's summary suspension.

▉▉ ▉ We shall now consider plaintiff's contention that the trial court improperly dismissed the first count of his complaint on the ground that the claim was barred by other affirmative matters. Plaintiff had sought a mandatory injunction reinstating him to full staff privileges. We first observe that section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(q)) provides for the dismissal of an action on the ground that the claim is barred by "other affirmative matter avoiding the legal effect of or defeating the claim." The affirmative matter must be more than evidence to dispute a material issue of fact. It must completely dispose of the cause of action or rebut crucial conclusions of law or conclusions of material fact unsupported by allegations of specific facts contained or inferred from the complaint. (*Downers Grove Associates v. Red Robin International, Inc.* (1987), 151 Ill. App. 3d 310, 315, 502 N.E.2d 1053.) The scope of judicial review is limited in a case where a physician whose staff privileges at a private hospital have been revoked and he seeks reinstatement. The court may only determine whether the hospital has complied with its bylaws in taking the disciplinary action. (*Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 424, 385 N.E.2d 108.) Further, the revocation of staff privileges made pursuant to hospital bylaws will only be reviewed and set aside if arbitrary, capricious or unreasonable. *Lapidot v. Memorial Medical Center* (1986), 144 Ill. App. 3d 141, 146, 494 N.E.2d 838.

▉▉ Here, the trial court found that plaintiff was accorded procedural due process, in that he was given notice, an opportunity to be heard, and representation by counsel at his disciplinary hearing. The trial court also concluded that the hospital substantially complied with its bylaws in suspending plaintiff. As we have indicated, the scope of judicial review in the case herein is strictly limited to ascertaining whether the hospital complied with its bylaws in rendering its decision. Where the court finds noncompliance its sole available remedy is to order compliance and not reinstatement of plaintiff. Under the circumstances, we believe that the trial court's order was proper.

▉▉ Plaintiff also asserts that the trial court erroneously dismissed counts II and IV of his complaint which sought damages for tortious interference with contractual relations and violation of antitrust laws. More specifically, in count II of plaintiff's complaint it is alleged that certain physicians who participated as a review committee of plaintiff's cases, tortiously interfered with his contract with the hospital. In count IV, plaintiff alleged that by suspending him, defendants conspired to reduce the number of available orthopedic surgeons in violation of criminal antitrust laws. In dismissing both counts the

trial court relied upon the medical studies act. (Ill. Rev. Stat. 1987, ch. 110, par. 8—2101 *et seq.*) The purpose of the statute is to improve health care by facilitating a constructive examination of the quality of care provided by medical professionals through the process of peer review. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 480, 468 N.E.2d 1162.) The statute grants immunity to those, who through peer review, assist a hospital in determining whether to grant, revoke or limit staff privileges. (Ill. Rev. Stat. 1987, ch. 110, par. 8—2102.) In relevant part, section 8—2101 provides:

> "All information, interviews, reports, statements, memoranda or other data of \*\*\* committees of licensed or accredited hospitals or their medical staffs \*\*\* used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based." Ill. Rev. Stat. 1987, ch. 110, par. 8—2101.

Additionally, section 8—2102 provides:

> "Such information, records, reports, statements, notes, memoranda, or other data, shall not be admissible as evidence, nor discoverable in any action of any kind in any court \*\*\*." Ill. Rev. Stat. 1987, ch. 110, par. 8—2102.

Also helpful in resolving the issue before us is section 10.2 of the Hospital Licensing Act, which, in relevant part, provides:

> "[N]o hospital and no individual who is a member, agent, or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline." Ill.

Rev. Stat. 1987, ch. 111½, par. 151.2.

This statute confers immunity to hospitals, their staffs and agents from civil damages resulting from participation in peer review to improve the quality of health care.

We believe that based on sections 8—2101 and 8—2102 of the medical studies act and section 10.2 of the Hospital Licensing Act, the trial court properly dismissed plaintiff's claims for civil damages based on tortious interference with contractual relations and antitrust violations. The foregoing statutory provisions grant absolute immunity to physicians, hospitals and their staffs from civil liability for services performed as alleged in plaintiff's complaint. *Barrows v. Northwestern Memorial Hospital* (1988), 123 Ill. 2d 49, 58-60, 505 N.E.2d 1182; *Knapp v. Palos Community Hospital* (1988), 176 Ill. App. 3d 1012, 1022-25, 531 N.E.2d 989.

■ Plaintiff also asserts that the trial court improperly dismissed count II of his complaint, which sought damages for breach of contract. Plaintiff argues that the bylaws constituted a contract of employment and by suspending him, the hospital committed a breach of that contract. As we have heretofore indicated, the scope of judicial review in cases in which a private hospital has revoked or reduced a physician's staff privileges is limited to the issue of whether in doing so it complied with its bylaws. (*Rodriguez-Erdman v. Ravenswood Hospital Medical Center* (1987), 163 Ill. App. 3d 464, 470, 516 N.E.2d 731.) Our review of the record leads us to conclude that the hospital substantially complied with its bylaws. Thus, we believe that the trial court properly dismissed plaintiff's complaint.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and COCCIA, JJ., concur.